# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO.  1:18-CR-047-01 |
| | ) | DOCKET NO.  1:18-CR-068-01 |
| v. | ) | DOCKET NO.  1:18-CR-088-01 |
| | ) | |
| | ) | |
| WANDA S. GREENE | ) | |
| | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES the United States of America, by and through R. Andrew Murray, United States Attorney, and respectfully submits this response to the defendant's sentencing memorandum, filed on August 22, 2019.  In that pleading, the defendant addresses the Court's attention to some, but not all, of the factors a district court must consider, pursuant to 18 U.S.C. § 3553(a), in imposing a sentence, and she ultimately requests a sizable downward departure or variance down to a sentence of 48 months of imprisonment.  The Government opposes that request.

Addressing the factor of "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), the defendant details, at length, her humble beginnings, peripatetic early married life, and strong work ethic.  She provides a lengthy list of improvements in Buncombe County during her twenty-year tenure as county manager, including scores of millions of dollars spent on construction projects and

an increase in the County's bond rating. She also sets forth her recent and current health concerns.

The Government does not contest those facts regarding the defendant's history and characteristics. It is clear, for example, that the defendant was very competent in her role as a manager for the County over the course of twenty years. It is also true, however, that if the defendant had not been sufficiently adept in managing the County's budget, in obtaining repeated delegations of authority by the County Commissioners, and by convincing them of her professionalism and trustworthiness, she would not have been able to conduct the multifarious fraudulent schemes for which she was eventually indicted and now faces sentencing. Her unparalleled knowledge of the entire County budget and budgetary process, her awareness that the Commissioners would rely on her representations and honesty, and her recognition that the County would arrange for no forensic audits, all allowed her to perpetrate the schemes here involving the misuse of millions of dollars of taxpayer money.

As for the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), the defendant adopts a tactful brevity. Def. Memo at 7. As the three indictments here set forth, however, the four separate fraudulent schemes are breathtaking in their audacity, their longevity, and the amount of taxpayer money that was misappropriated.

In 1:18-CR-047-01, the defendant abused her positon to spend hundreds of thousands of dollars, over the course of many years, on herself for her personal pleasure, such as for electronic devices, wine and groceries, clothing, furniture, and more. She believed she could get away with this because the County's system allowed her to approve her own expenses and those of her subordinates, whose County purchase cards she also used, and she knew there would be no meaningful audit of these improper expenditures. Even after another county employee reported that her son was, to a lesser degree than she, committing the same type of abuse, she continued to embezzle from the taxpayers, after first assuring that her son would suffer no job loss and only an economic slap on the wrist. This level of impudence is indicative of an actor who is confident that she will not be caught or challenged, nor will her actions be meaningfully reviewed.

Similarly, in 1:18-CR-068-01, the defendant believed, quite accurately, that she could persuade the Commissioners to authorize the funding of a civil rights lawsuit settlement for more than $4,000,000 over what was actually required, resulting in what was essentially a slush fund for her use. She then used $2.3 million of that money to purchase whole life insurance policies for herself and approximately ten other high-ranking employees. Within weeks of her retirement, she cashed out almost $400,000 from her taxpayer-purchased policies.

As for the second scheme charged in 1:18-CR-068-01, the defendant committed tax fraud by repeatedly failing to declare her income from her embezzlements and, for tax year 2017, she brazenly filed a Schedule C in which she claimed that she owned and operated a sole proprietorship named "Buncombe County," located at 200 College Street in Asheville (the true address for the County offices). She thereby reduced her reported taxable income by over $37,000 through her claimed business losses in operating this sole proprietorship. The temerity of submitting a tax form to the IRS claiming that a *county* is one's sole proprietorship is simply astounding.

Finally, in 1:18-CR-088-01, the defendant conditioned the awarding of County contracts on her receipt of expensive gifts and luxurious trips over the course of several years. Unsatisfied with merely receiving many thousands of dollars' worth of fine meals and luxurious lodging, she compounded her fraud by then falsely claiming and receiving *per diem* reimbursements for her supposed expenditures on meals and lodging on County business, as well as by hoarding her accumulated leave hours by claiming she was working during each of these trips, then cashing those out upon her retirement.

Section 3553(a)(2)(B) and (C) direct the Court to consider the need for the sentence to afford adequate deterrence to criminal conduct, and to protect the public from other crimes of the defendant, respectively. As the defendant's memorandum

notes, deterrence of this particular felon is not a major factor here. That is, for the reasons stated in her pleading, the Government is not greatly concerned that the defendant is likely to commit further crimes, nor is the public in great need of future protection from the defendant.

The Government disputes, however, the defendant's assertion that the sentence she requests is sufficient for general deterrence. As these investigations have shown, there is a serious danger that the temptation of easy money available to a public official or employee who knows how to take advantage of lax oversight, ineffective auditors, and overly-trusting superiors, among other things, can be a mighty force. It is imperative that the Court fashion a sentence calculated to dissuade other public servants from engaging in similar conduct.

Perhaps the single most salient factor in these cases, however, is found at 18 U.S.C. § 3553(a)(2)(A): the need for the sentence imposed "to promote respect for the law." There can be no doubt that the general public's faith and confidence in the honesty of local government has been deeply shaken by the past two years' revelations of a culture of corruption. This has resulted in cynicism and— based on a review of interviews in the media, letters to the editors, comments on news sites, and discussions on social media—the belief by many citizens that the system is rigged to favor the wealthy, the connected, and those at the levers of power. Even after the indictments and convictions obtained thus far in these Buncombe County

corruption cases, many citizens harbor the belief—or fear—that there will still be no consequences for the malefactors, no deterrence to others similarly situated, and that "business as usual" will continue here. The Court, therefore, should impose a sentence that adequately reflects the grave public harm the defendant's actions have caused, in order to dissuade others from following a similar path and to promote the public's respect for the law and a belief that crimes carry consequences and justice will ultimately prevail.

Respectfully submitted, this 26th day of August, 2019.

R. ANDREW MURRAY
UNITED STATES ATTORNEY


/s/ Richard Lee Edwards

RICHARD LEE EDWARDS
ASSISTANT U. S. ATTORNEY
N.C. Bar Number 30205
100 Otis Street
Asheville, NC 28801
Telephone: (828) 271-4661
Fax: (828) 271-4670
E-mail: Richard.Edwards2@usdoj.gov